**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**July 26, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JORGE MARTINEZ, a/k/a ANTONIO
ZAMORA-PEREZ, a/k/a JORGE
MARTINEZ-CERVANTES,

Defendant-Appellant.

No. 04-4179

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NO. 04-CR-34-02-PGC)**

G. Fred Metos, Attorney at Law, Salt Lake City, Utah, for Defendant-Appellant.

Wayne T. Dance, Assistant United States Attorney (Paul M. Warner, United
States Attorney, with him on the brief), Salt Lake City, Utah, for Plaintiff-
Appellee.

Before **HENRY**, **HARTZ**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

Jorge Martinez appeals his conviction and sentence for possessing

methamphetamine with the intent to distribute. Martinez claims the district court

should have granted a mistrial based on the government's failure to disclose the substance of Martinez's pretrial statements to a government agent. He also claims the district court improperly sentenced him under the Federal Sentencing Guidelines. We conclude that the district court did not err in denying the request for a mistrial and that Martinez's sentence was reasonable under 18 U.S.C. § 3553(a).

We therefore AFFIRM.

## I. Background

Utah Highway Patrol officers arrested Alejandro Cervantes and Jorge Martinez in Juab County, Utah, after discovering three pounds of methamphetamine in the spare tire of their car. With Cervantes driving, the pair claimed they were on a road trip from Phoenix, Arizona, to Ogden, Utah.

Following their arrest, Cervantes and Martinez were interviewed by DEA Agent Jeffrey Clark and Agent Craig Hicken of the Utah Department of Public Safety. Cervantes, interviewed first, told the agents the car was his but that he did not know drugs were in the spare tire until they had been stopped near Flagstaff, Arizona. At that time Martinez warned him to drive more carefully because there were drugs in the car. Cervantes further stated that the drugs were to be delivered to a person known as "El Grande" in Ogden, Utah.

The agents then interviewed Martinez. He reversed the finger-pointing, stating that (1) Cervantes owned the drugs and (2) Cervantes informed him of the

drugs in the car only after they had been stopped for a traffic violation in Flagstaff.

Cervantes was then interviewed again. When told of the seriousness of his case, Cervantes begged the officers to bring Martinez into the room to give them El Grande's phone number. The officers brought Martinez back, and Cervantes continued to beg him to give the agents El Grande's number. Prompted by Cervantes' pleading, Martinez wrote down a number, which later proved to be false.

After the interviews, Agent Hicken prepared a report of what had been said during them. Martinez received this report before trial, pursuant to Federal Rule of Criminal Procedure 16(a)(1)(A). Agent Clark did not prepare a separate report.

At trial, the government discussed these interviews in several contexts. First, during his opening statement, the prosecutor told the jury they would hear that Martinez "admitted that he had known El Grande and had contacts with him in the past in a similar type of situation." Vol. IV, Pg. 32–33. Second, the government called the interviewing agents as witnesses. Agent Clark took the stand and testified that Martinez admitted several incriminating points: (1) the drugs belonged to Martinez, (2) he had previously transported drugs for El Grande, (3) he described El Grande's physical appearance, and (4) he detailed the procedure for delivering the drugs to Utah. On cross examination, Agent Clark admitted that none of this information was contained in Agent Hicken's report.

Martinez, however, lodged no objection to Agent Clark's testimony on the basis of surprise or nondisclosure under Rule 16.

Agent Hicken testified after Agent Clark. None of Agent Hicken's testimony is in dispute, and Martinez did not cross-examine Agent Hicken about the information revealed in Agent Clark's testimony.

Following Agent Hicken's testimony, the prosecution rested. The defense also rested without calling any witnesses but immediately moved for a mistrial based on the testimony of Agent Clark, arguing it showed the government had failed to disclose the substance of Martinez's admissions to Agent Clark during discovery, as required by Rule 16(a)(1)(A). The court denied the motion, ruling that the substance of the testimony had been provided by Agent Hicken's report, which summarized his and Agent Clark's interviews with Martinez and Cervantes at the jail. The court further held that a mistrial was inappropriate because Martinez could have objected as early as the opening statement but chose not to. The jury returned a guilty verdict.

By the time of sentencing, the Supreme Court had issued its landmark ruling in *Blakely v. Washington*, 542 U.S. 296 (2004), which cast doubt on the constitutionality of the federal sentencing scheme under the Sixth Amendment. A decision was pending in *United States v. Booker*, 543 U.S. 220 (2005), in which the Supreme Court would ultimately apply *Blakely* to hold that mandatory application of the United States Sentencing Guidelines also violated the Sixth

-4-

Amendment. Presciently, the district court concluded the Guidelines were inconsistent with *Blakely* and that it was not bound by them in sentencing Martinez. Accordingly, it imposed a discretionary sentence of 210 months. It also imposed an identical alternative sentence that would take effect in the event the court was required to follow the Guidelines.

## II. Analysis

Martinez raises two issues for us to consider. First he claims the district court should have granted his motion for a mistrial because the government's report did not contain all the statements he made in the interview. Second, he claims the district court improperly failed to consider the factors set forth in 18 U.S.C. § 3553(a) when imposing sentence. We reject both claims.

### A. Rule 16 Mistrial Motion

Martinez argues that the use of his admissions at trial violated Rule 16 and that the only adequate remedy was a mistrial. "We review a district court's refusal to grant a mistrial for abuse of discretion," which means we will reverse only if the decision "was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *United States v. Stiger*, 413 F.3d 1185, 1194 (10th Cir. 2005). "In determining whether to grant a mistrial, a district judge must first determine whether an error has occurred and, if so, whether that error impaired the 'defendant's right to a fair and impartial trial.'" *Id*. Here, we find no abuse of discretion.

Rule 16(a)(1)(A) requires the government to "disclose to the defendant the substance of any relevant oral statement made by the defendant . . . in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial."[1] This rule "is designed to provide the defendant with sufficient information to make an informed decision about a plea, to allow the court to rule on admissibility motions before trial, to minimize prejudicial surprise at trial, and to generally increase the efficiency of litigation." *United States v. Hernandez-Muniz*, 170 F.3d 1007, 1010 (10th Cir. 1999).

Should the government fail to comply with this rule, Rule 16(d)(2) provides a number of options for the court: "(A) order that party to permit the discovery or inspection; specify its time, place, and manner; and prescribe other just terms and conditions; (B) grant a continuance; (C) prohibit that party from introducing the undisclosed evidence; or (D) enter any other order that is just under the circumstances." Depending on the circumstances, even a mistrial could be appropriate under Rule 16(d)(2)(D). *See, e.g., United States v. Crouthers*, 669 F.2d 635, 641 (10th Cir. 1982) (suggesting that defendant could have moved for a mistrial).

---

[1] Rule 16(a)(1)(A), by its terms, applies only where the defendant requests disclosure. Here, however, the government was proceeding under an open file policy and acknowledges the rule applied in this case.

We have identified several considerations a district court should make in determining which sanction is appropriate for failure to comply with Rule 16: (1) the reasons the government delayed producing the requested materials, including whether or not the government acted in bad faith when it failed to comply with the discovery order; (2) the extent of prejudice to the defendant as a result of the government's delay; and (3) the feasibility of curing the prejudice with a continuance. *United States v. Muessig*, 427 F.3d 856, 864 (10th Cir. 2005) (citing *United States v. Gonzales*, 164 F.3d 1285, 1292 (10th Cir. 1999)); *United States v. Wicker*, 848 F.2d 1059, 1061 (10th Cir. 1988). Applying these factors, the district court should impose "the least severe sanction that will accomplish prompt . . . and full compliance with the court's discovery orders."[2] *Wicker*, 848 F.2d at 1061.

In arguing for a mistrial under Rule 16, Martinez claimed that Agent Hicken's report "was essentially an exculpatory statement" that said nothing about any dealings with El Grande. He argued that statements about Martinez working with El Grande were "well beyond what was in the discovery [he] was

---

[2] A mistrial is a drastic sanction, and any "motion for a mistrial should be made promptly." *United States v. Ortiz-Arrigoitia*, 996 F.2d 436, 442 (1st Cir. 1993) (citing *Saville v. United States*, 400 F.2d 397, 400 (1st Cir. 1968) (concluding that motion for mistrial was untimely where defendant failed to act at the earliest possible opportunity)). This doctrine is particularly relevant in the context of a Rule 16 violation, for which less severe remedies are preferred. A defendant should not wait to object until the only meaningful remedy would be a mistrial. Rather, a defendant should object at the first reasonable opportunity to allow the court to explore less drastic remedies.

provided." In response, the court first concluded that the government had "substantially complied" with its disclosure obligations by providing the "substance" of the disclosure prior to trial. Vol. V, Pg. 235. In addition, the district court found that Martinez knew from the government's opening statement the basis of the proposed testimony but failed to timely object:

> [The prosecutor], I remember in his opening argument, laid out all this stuff that was coming in. If for some reason you thought that was a surprise, we could have discussed it then and so forth. I think everybody knows that there were incriminating statements that were made, so I'm going to deny the motion for a mistrial.

*Id.*

We recognize that disclosure of a defendant's statements should certainly be made prior to trial. Rule 16(a)(1)(A) contemplates *pretrial* disclosure, and ordinarily the process followed by the government here—production of a written report—would suffice. Unfortunately, in this appeal we are hampered in our assessment of whether the disclosure obligation was fully satisfied because neither party has provided the written report.

The district court, however, was justified in denying the request for a mistrial based on Rule 16 because it was not timely. First of all, as early as the government's opening statement, Martinez knew the basis of Agent Clark's testimony and was on notice that the testimony could broadly include disclosures that may not have been contained in the report. Martinez had a second opportunity to object to the testimony when Agent Clark took the stand but again

lodged no objection. At that time, under Rule 16 and our case law, Martinez could have allowed the court to cure the nondisclosure, either to strike the testimony or continue trial based on the violation. Either remedy would have satisfied Rule 16 and would not have required the drastic remedy of mistrial. *See Wicker*, 848 F.2d at 1061 (stating that a court should impose the "least severe sanction"). Rule 16 and our cases specifically mention continuance or exclusion of the evidence as preferred remedies. Fed. R. Crim. P. 16(d)(2)(B), (C); *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996) (affirming decision to admit evidence offered in violation of Rule 16 after giving defendant time to review it); *United States v. Wicker*, 848 F.2d 1059, 1062 (10th Cir. 1988) (affirming decision to suppress evidence based on a Rule 16 violation); *United States v. Crouthers*, 669 F.2d 635, 640–41 (10th Cir. 1982) (affirming decision to suppress evidence offered in violation of Rule 16 but denying defendant's motion for mistrial); *United States v. Mitchell*, 613 F.2d 779, 781 (10th Cir. 1980) (noting that defendant could have requested a cautionary instruction).

The other considerations relevant to a Rule 16 violation also suggest such a drastic remedy was not appropriate in this case. Martinez does not claim the government acted in bad faith. Nor has he shown any prejudice by the government's delay in disclosing the statements; the record reflects that he was able to cross-examine Agent Clark effectively.

At oral argument, Martinez's counsel suggested that the late revelation of this evidence undermined the entire theory of his defense and that had he seen the evidence sooner, he might not have taken the case to trial. While it is true Rule 16 was "designed to provide the defendant with sufficient information to make an informed decision about a plea," *Hernandez-Muniz*, 170 F.3d at 1010, any error in this regard could have been remedied without a mistrial.[3] In light of these circumstances, we cannot say the district court abused its discretion in declining to grant a mistrial.

*B. Sentencing*

Martinez also claims the district court erred by issuing a discretionary sentence that did not specifically consider the factors described in 18 U.S.C. § 3553(a). Since *United States v. Booker*, 543 U.S. 220 (2005), we review sentences for reasonableness. *United States v. Kristl*, 437 F.3d 1050, 1055 (10th Cir. 2006). In *Kristl* we explained that sentences must be both substantively and procedurally reasonable. *Id.* ("[T]he reasonableness standard of review set forth in *Booker* necessarily encompasses both the reasonableness of the length of the sentence, as well as the method by which the sentence was calculated."). Martinez raises a procedural challenge, arguing that the court erred by not addressing each aspect of § 3553(a).

---

[3] For example, Martinez could have asked for a short continuance to evaluate his case in light of the new information. Based on this information, the district court could have allowed him to change his plea without any penalty.

-10-

This argument is foreclosed by *United States v. Rines*, 419 F.3d 1104 (10th Cir. 2005), in which we concluded the sentencing court does not abuse its discretion by failing to mention each of the § 3553(a) factors:

> It is true that the district court did not march through § 3553(a)'s sentencing factors, but we have never imposed such a requirement. . . . It is quite clear that the sentencing court is not required to consider individually each factor listed in § 3553(a) before issuing a sentence. Moreover, we do not demand that the district court recite any magic words to show that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider. Here, the district court stated that it "look[ed] at the record in its entirety," and after its review it concluded that 70 months was an appropriate sentence. The court heard several different arguments regarding the appropriate sentencing range and was obviously familiar with the facts of the case. We will not make the useless gesture of remanding for reconsideration when Defendant was aware at sentencing that all relevant factors would be considered by the district court.

*Id.* at 1107 (internal citations and quotations omitted).

Here, the district court sentenced Martinez prior to the Supreme Court's ruling in *Booker*, which made the sentencing guidelines advisory. The court, however, did not apply the guidelines in a mandatory fashion. Instead, anticipating the holding in *Booker*, the district court stated that it was "going to sentence as an advisory—sentence *under the preexisting law*. However, in doing that, I will take a look at the guidelines as instructive on the point." Vol. VI, Pg. 4 (emphasis added). The court further stated, "I think I should have to make a determination of the appropriate sentence in looking at everything." *Id*. at 6–7. Based on this review of the case, the court concluded: "[P]roceeding as a

discretionary matter, the defendant will be sentenced to 210 months, slightly down from the 235 months under the guidelines. If I were under the guidelines, I would grant [the] motion for a downward departure . . . and sentence him to 210 months under the guidelines, so either way I would reach the same sentence of 210 months." *Id.* at 16.

As in *Rines*, the district court heard multiple arguments regarding the appropriate sentencing range and was familiar with all the relevant facts of the case. Therefore, we conclude the district court did not err when sentencing Martinez and that his sentence is reasonable under § 3553(a).

### III. Conclusion

Because the district court did not err in denying a mistrial, and because the district court properly considered the entire record in applying the Guidelines in an advisory fashion, we AFFIRM.